1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6

7

8

9

10

| MOUNTAIN HI, LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINDE GAS & EQUIPMENT INC.,<br><br>Defendant. | C22-1432 TSZ<br><br>ORDER |
| --- | --- |

11    THIS MATTER comes before the Court on a motion to dismiss, docket no. 12,

12 brought by defendant Linde Gas & Equipment Inc., formerly known as Praxair

13 Distribution, Inc. ("Linde"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

14 Having reviewed all papers filed in support of, and in opposition to, the motion, the Court

15 enters the following Order.

16 **Background**

17    Plaintiff Mountain Hi, LLC produces cannabis products in Washington.  Compl. at

18 ¶ 5 (docket no. 1-2).  Linde is a Delaware corporation headquartered in Connecticut that

19 distributes various gases, including butane ($C_4H_{10}$).  _Id._ at ¶¶ 3 & 6.  Plaintiff purchased

20 instrument-grade butane from Linde between June 30 and September 1, 2021.  _Id._ at ¶¶ 8

21 & 27–29.  After using the butane delivered by Linde to generate cannabis products,

22 plaintiff was advised by two different testing agencies that its products contained more

23

1  than the permitted level of benzene ($C_6H_6$). *See id.* at ¶¶ 30–44 & Exs. A–C; *see also id.*

2  at ¶ 20 (indicating that Washington regulations limit the amount of benzene in cannabis

3  products to 2 ppm, citing WAC 314-55-109(4)(b)(iv)).  Plaintiff alleges that the gas

4  supplied by Linde was defective, having far more benzene (130 ppm) than acceptable in

5  instrument-grade butane.  *Id.* at ¶¶ 47–48 & Ex. D.  Plaintiff further alleges that benzene

6  accumulated in Linde's tanks because Linde cleaned them on only a quarterly basis.  *Id.*

7  at 52–53.

8       On behalf of a putative class of all cannabis businesses operating in Washington

9  that received benzene-tainted butane from Linde after August 31, 2018, plaintiff asserts

10  three claims.  Two of the claims are brought under Washington's Consumer Protection

11  Act ("CPA"); one alleges "unfair" and the other alleges "deceptive" business practices.[1]

12  The third claim seeks recovery under Washington's Product Liability Act ("WPLA").

13  Linde moves to dismiss all claims, arguing (i) the WPLA claim is barred by the economic

14  loss exclusion codified at RCW 7.72.010(6)[2]; (ii) under the terms of the parties' contract,

15  the CPA claims are governed by Delaware law, which would not allow recovery because

16  plaintiff cannot establish that it is entitled to injunctive relief; and (iii) if Washington law

17  applies to the CPA claims, plaintiff has not stated a plausible claim.  Linde's motion has

18  merit as to plaintiff's WPLA claim, but not with regard to plaintiff's CPA claims.

---

20  [1] The Court believes that plaintiff's CPA claims are likely duplicative, in effect stating only one claim for unfair and/or deceptive business practices, and it will address the issue prior to trial.

22  [2] The WPLA governs claims for "harm" related to a "product."  *See* RCW 7.72.010(3)–(5) (defining "product," "product liability claim," and "claimant"); *see also* RCW 7.72.030 & .040. According to the WPLA, "the term 'harm' does not include direct or consequential economic loss."  RCW 7.72.010(6).

**Discussion**

**A.     WPLA's Economic Loss Exclusion**

The WPLA's economic loss exclusion[3] "marks the boundary between the law of contracts—designed to enforce expectations created by agreement—and the law of torts—designed to protect citizens and their property by imposing a duty of reasonable care." *Hofstee v. Dow*, 109 Wn. App. 537, 543, 36 P.3d 1073 (2001).  Product-related damages that are remediable in contract are not recoverable in tort under the WPLA.  *See id.*; *see also* RCW 7.72.010(6).  In a commercial transaction, the seller and purchaser can negotiate "terms, warranties, disclaimers, and other specifications."  109 Wn. App. at 544.  If the product is faulty and the only losses are economic, the Uniform Commercial Code ("UCC"), codified in RCW Title 62A, outlines the buyer's remedies for "direct, incidental, and consequential losses."  *Id.*  In contrast, the WPLA is concerned with "obligations imposed by law rather than by bargain," and imposes liability on a manufacturer or distributor of "any unsafe product that creates an unreasonable risk of harm to persons or property."  *Id.*  The key distinction between UCC and WPLA claims is whether the damages at issue arise from "expectations created by agreement" or from "a breach of the duty of reasonable care."  *Id.*

---

[3] In their briefing, the parties refer to the "independent duty doctrine," formerly called the "economic loss rule," which is a judicially-created mechanism for delineating between contract and tort claims.  *See Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 241 P.3d 1256 (2010).  The test adopted by the Washington Supreme Court is whether the injury at issue is "traceable" to "a breach of a tort law duty of care arising independently of the [parties'] contract."  *Id.* at 394.  If so, then the injury is remediable in tort.  *Id.* at 402.  Although the *Eastwood* Court refers to the WPLA for illustrative purposes, *id.* at 395–96, the judicial "independent duty doctrine" and the WPLA's economic loss exclusion are distinct, and the Court has exercised care to avoid merging or confusing the concepts.

1    The Washington Supreme Court has opted for a "risk of harm" analysis, rather

2    than a bright-line approach, in determining whether damages are economic for purposes

3    of the WPLA.  *See Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr.,*

4    *Inc.*, 119 Wn.2d 334, 351, 831 P.2d 724 (1992).  In rejecting the bright-line approach,[4]

5    however, the Washington Supreme Court did not define the "risk of harm" method, *see*

6    *id.* at 351–55; *see also Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847,

7    866–67, 774 P.2d 1199, 779 P.2d 697 (1989), and the lower courts, as well as this

8    district, have applied two different tests:  (i) the "sudden and dangerous" standard; and

9    (ii) the "evaluative" approach, *see Hofstee*, 109 Wn. App. at 544; *see also Wilmington*

10   *Trust Co. v. Boeing Co.*, No. C20-402, 2021 WL 754030, at *6 (W.D. Wash. Feb. 26,

11   2021); *King County v. Viracon, Inc.*, No. 2:19-cv-508, 2019 WL 12043501, at *3 (W.D.

12   Wash. Dec. 4, 2019).  Under the former standard, if the product failure was "a sudden

13   and dangerous event," then it constitutes a tort that is actionable under the WPLA.

14   *Hofstee*, 109 Wn. App. at 545.  The latter approach expands the inquiry and considers, in

15   addition to the manner in which the injury arose, the nature of the defect and the type of

16   risk.  *Id.*; *see Viracon*, 2019 WL 12043501, at *3 (outlining the three elements of the

17   "evaluative" approach).

18        Under both tests, plaintiff is precluded from proceeding under the WPLA.  The

19   operative pleading makes no allegation that the presence of benzene in the butane

20   supplied by Linde was "a sudden and dangerous event."  To the contrary, the Complaint

21

22   [4] The bright-line approach would treat losses as purely economic if the damage was only to the
     product itself.  119 Wn.2d at 351.

23

ORDER - 4

1    indicates that two 80-gallon tanks were delivered to plaintiff's facility in Arlington on

2    June 30, 2021, and that between July 6 and September 1, 2021, another 41 tanks were

3    received.  Compl. at ¶¶ 28–29.  Testing of plaintiff's products did not reveal elevated

4    levels of benzene until September 1, 2021.  *Id.* at ¶¶ 35 & 37.  These facts indicate a

5    gradual, rather than a sudden, problem.  Moreover, plaintiff does not allege that anyone

6    was harmed by ingesting products containing too much benzene.  Indeed, the operative

7    pleading suggests quite the opposite; plaintiff was forced to recall the tainted products

8    and issue refunds to its producers.  *Id.* at ¶ 56.  In other words, the testing protocols

9    performed their function and prevented the products at issue from posing a danger to

10   consumers (above and beyond the risks associated with cannabis itself).  Thus, plaintiff's

11   WPLA claim does not satisfy the "sudden and dangerous" standard.

12          The additional considerations of the "evaluative" approach do not support a

13   different result.  The crux of plaintiff's WPLA claim against Linde is that the butane

14   supplied by Linde did not comport with the standards applicable to instrument-grade

15   butane.  The operative pleading does not, however, specify the benzene limit for

16   instrument-grade butane or describe any inherent risk (for example, explosiveness or

17   increased chance of gas leakage) associated with high benzene levels in butane, whether

18   instrument-grade or not.  Rather, the harm associated with benzene was specific to

19   plaintiff's manner of using the butane.  Plaintiff's expectation of being supplied

20   instrument-grade butane, with no or only minimal benzene, was based entirely on the

21   parties' contractual relationship and Linde's alleged knowledge about plaintiff's business

22   and the requirements of cannabis processing.  *See* Compl. at ¶¶ 10–11.  Plaintiff has not

23

1  pleaded a plausible claim that the "harm" at issue was non-economic within the meaning

2  of RCW 7.72.010(6), and its WPLA claim is therefore DISMISSED without prejudice.[5]

3  <u>See</u> <u>Wilmington Trust</u>, 2021 WL 754030, at *8 ("Plaintiffs' inability to operate their

4  aircraft . . . represents a failure to meet their contractual expectations, not a risk of harm

5  from an inherently unsafe product.").

6  **B.    Choice of Law for CPA Claims**

7      Linde's contention that the parties agreed to apply Delaware law to plaintiff's

8  CPA claims is unsupported by the contract at issue, namely the Product Supply

9  Agreement dated May 24, 2021 ("PSA").  In assessing whether the parties intended their

10  choice-of-law clause to cover extracontractual claims, the Court must focus on the

11  "objective manifestations" of the parties' intent, <u>i.e.</u>, the "actual words" used in the

12  agreement.  <u>Wash. Land Dev., LLC v. Lloyds TSB Bank, PLC</u>, No. C14-179, 2014 WL

13  3563292, *5 (W.D. Wash. July 18, 2014).  The PSA states, "This Agreement will be

14  governed by the laws of the State of Delaware."  Ex. A to Def.'s Mot. (docket no. 12-1).

15  This language is not broad enough to have the effect that Linde proposes.

16      In <u>Washington Land Development</u>, on which Linde relies, the contract indicated

17  that Hong Kong law would govern the "transaction," and the court concluded that the

18  parties intended Hong Kong law to apply "throughout the course of the contract's

19

20  ───────────────────

21  [5] Plaintiff has not requested an opportunity to amend its WPLA claim, and given the nature of
    the deficiency, the Court doubts that the pleading can be cured, <u>see</u> <u>Herring Networks, Inc. v.</u>
22  <u>Maddow</u>, 8 F.4th 1148, 1161 (9th Cir. 2021) (affirming district court's dismissal with prejudice
    because plaintiff "never asked to amend" and "amendment would have been futile"), but the
23  Court nevertheless grants plaintiff leave to restate its WPLA claim.

implementation." 2014 WL 3563292, at *5. The CPA claim in that matter was "premised on allegedly deceptive contract language and Defendant's allegedly deceptive acts in exercising its discretion under that contract." *Id.* In contrast, the PSA's choice-of-law provision does not go beyond the agreement itself, and the CPA claims at issue are not "inextricably," *see id.*, related to implementation of the PSA, but rather concern Linde's representations about the quality and/or nature of its butane.

The choice-of-law clauses in the other two cases cited by Linde are also dissimilar from the one contained in the PSA. *See Garner v. Amazon.com, Inc.*, No. C21-750, --- F. Supp. 3d ---, 2022 WL 1443680 (W.D. Wash. May 6, 2022); *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 259 P.3d 129 (2011). In *Garner*, the provision stated that "applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use *and any dispute of any sort that might arise between you and Amazon*." 2022 WL 1443680, at *3 (emphasis added).[6] In *Schnall*, the contracts required AT&T Wireless customers to "litigate asserted violations of their contract in the respective jurisdiction where they signed the contract." 171 Wn.2d at 266. Contrary to Linde's interpretation, the issue in *Schnall* was not whether this choice-of-venue provision dictated the law applicable to the asserted CPA claims, but rather whether the choice-of-venue clause supported the trial court's decision to deny certification of a nationwide class. *Id.* at 268–76 & 280.

---

[6] In *Garner*, the court observed that the parties did not appear to dispute which law governed, and that the plaintiff had made no effort to rebut the defendants' showing that no actual conflict existed between Washington's wiretap law and the wiretap laws of other states, pursuant to which the plaintiff had brought claims. 2022 WL 1443680, at *4. Thus, the *Garner* court was not required to conduct a choice-of-law analysis. *Id.*

1   All three cases mentioned by Linde are distinguishable, and Linde has offered no

2   authority to contradict the Washington Supreme Court's comment that "a choice of law

3   provision in a contract does not govern tort claims arising out of the contract." *See*

4   *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 159, 744 P.2d 1032, 750

5   P.2d 254 (1987).  Moreover, even if Delaware law applied, plaintiff's CPA claims would

6   still be asserted under Washington statutes, and Linde's contention that jurisprudence

7   construing Delaware's Uniform Deceptive Trade Practice Act would govern is without

8   merit; Delaware courts would follow Washington's precedents in interpreting

9   Washington's CPA.  *See* *Sun Oil Co. v. Wortman*, 486 U.S. 717, 730–31 (1988)

10  (misconstruing the substantive law of another state in a manner that contradicts "clearly

11  established" precedent of that other state, which was brought to the forum court's

12  attention, constitutes a violation of the full faith and credit clause and/or the due process

13  clause of the Constitution).

14  **C.   Plausible Pleading of CPA Claims**

15  To survive a Rule 12(b)(6) challenge, a complaint must offer "more than labels

16  and conclusions," contain more than a "formulaic recitation of the elements of a cause of

17  action," and indicate more than mere speculation of a right to relief.  *Bell Atl. Corp. v.*

18  *Twombly*, 550 U.S. 544, 555 (2007).  In ruling on a motion to dismiss, the Court must

19  assume the truth of the plaintiff's allegations and draw all reasonable inferences in the

20  plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The

21  question for the Court is whether the facts in the complaint sufficiently state a "plausible"

22  ground for relief.  *Twombly*, 550 U.S. at 570.

23

1    To establish a violation of the CPA, a private plaintiff must prove:  (i) the

2    defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice

3    occurred in the conduct of trade or commerce; (iii) such act or practice affected the public

4    interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a

5    causal relationship exists between the defendant's act or practice and the plaintiff's

6    injury.  _Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co._, 105 Wn.2d 778,

7    785–93, 719 P.2d 531 (1986).  In this action, plaintiff alleges that Linde "sold instrument-

8    grade butane" containing more than the "acceptable concentration" of benzene, Compl. at

9    ¶¶ 8 & 48 (docket no. 1-2), that plaintiff suffered economic loss as a result of Linde's

10   conduct, _id._ at ¶ 56, and that the practice of selling butane having more than the expected

11   level of benzene has injured or has the capacity to injure other cannabis-processing

12   businesses in Washington, _see id._ at ¶ 57; _see also_ RCW 19.86.093 (articulating the

13   standard for showing that an act or practice is "injurious to the public interest").  Plaintiff

14   has pleaded a plausible CPA claim.

15   Linde contends that the Complaint is insufficient because (i) the PSA allocated to

16   plaintiff the risk of butane not conforming to specifications; (ii) plaintiff is attempting to

17   transfer its "own non-delegable regulatory obligations" concerning benzene levels to

18   Linde; (iii) the CPA does not apply to private contract disputes; and (iv) if plaintiff

19   complied with product-testing requirements, then cannabis consumers were never at risk

20   from benzene poisoning and/or the butane supplied to plaintiff before August 11, 2021,

21   was "acceptable."  _See_ Def.'s Mot. at 13–14 (docket no. 12).  These arguments, the first

22   two of which are in the nature of affirmative defenses, _i.e._, assumption of the risk and

23

ORDER - 9

estoppel, <u>see</u> Fed. R. Civ. P. 8(c)(1), and the latter two of which either deny the facts or

draw negative inferences from the facts set forth in the operative pleading, are more

appropriately raised in a motion for summary judgment and/or at trial.  Linde's motion to

dismiss the CPA claims as inadequately pleaded is DENIED.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1)     Defendant's motion to dismiss, docket no. 12, is GRANTED in part and

DENIED in part as follows.  Plaintiff's third cause of action pursuant to Washington's

Product Liability Act is DISMISSED without prejudice and with leave to amend within

twenty-one (21) days of the date of this Order.  Defendant's motion is otherwise

DENIED.

(2)     The parties' Joint Status Report remains due on December 12, 2022.  <u>See</u>

Order (docket no. 5).

(3)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 7th day of December, 2022.

Thomas S. Zilly
United States District Judge

ORDER - 10